IN THE UNITED STATES DISTRICT COURT

FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| UNITED STATES OF AMERICA | ) |
| | ) |
| v. | ) Criminal No. 14-193 |
| | ) |
| GERARD PORTER | ) |

OPINION

DIAMOND, D.J.

On August 12, 2014, a federal grand jury returned a three-count indictment charging Gerard Porter ("defendant") with possession with intent to distribute heroin (Count One), possession of a firearm in furtherance of a drug trafficking crime (Count Two), and possession of a firearm by a convicted felon (Count Three).

Currently pending before the court is defendant's motion to suppress physical evidence (Document No. 23)[1]. Defendant seeks suppression of, *inter alia*, 50 bricks of heroin, a quantity of marijuana, 3 loaded firearms and approximately $17,000 in cash that were seized from a residence located at 2641 Shelton Avenue in Pittsburgh, Pennsylvania, on October 11, 2013.

---

[1] Also pending is defendant's motion to produce evidence which the government intends to use under Federal Rules of Evidence 404(b) and 609 (Document No. 24). While Rule 404(b) provides no specific time limit for pretrial notice, courts that have considered what constitutes "reasonable notice" have concluded that seven to ten days prior to trial is sufficient notice under the rule. See United States v. Evangelista, 813 F.Supp. 294, 302 (D.N.J. 1993) (ten days); United States v. Alex, 791 F.Supp. 723, 728-29 (N.D.Ill. 1992) (seven days); United States v. Williams, 792 F.Supp. 1120, 1133 (S.D.Ind. 1992) (ten days). The only advance notice requirement under Rule 609 is that the government must provide "reasonable advance written notice" of its intent to use the evidence if 10 years have passed since the conviction or release from confinement for it, whichever is later. Fed.R.Evid. 609(b). The government acknowledges its obligation to provide reasonable notice of any evidence it intends to offer under Rule 404(b). Accordingly, defendant's motion for notice of Rule 404(b) and 609 evidence will be granted and the court will enter an order requiring the government to disclose any evidence falling within the purview of those Rules which the government determines it intends to use at trial no later than two weeks prior to trial. To the extent defendant seeks to have any such evidence excluded from trial, such a request is premature and will be denied.

In its response (Document No. 26), the government opposes the motion, *inter alia*, on the ground that defendant does not have standing to challenge the search because he lacked a reasonable expectation of privacy in 2641 Shelton Avenue ("the Shelton house"). A suppression hearing was held on February 10, 2015. Because the court finds that defendant has failed to meet his burden of proving that he had a reasonable expectation of privacy in the Shelton house on the day of the search, his motion to suppress will be denied.

## Factual Background

The evidence adduced at the suppression hearing through the testimony of Deputy United States Marshal Michael Namey established the following. On October 11, 2013, Deputy Marshal Namey and other members of the Western Pennsylvania Fugitive Task Force, which includes deputies employed by both the United States Marshals Service and the Allegheny County Sheriff's Office, went to the Shelton house for the purpose of serving five outstanding arrest warrants for defendant. Upon their arrival, the officers knocked on the front door. They observed Keona Williamson, defendant's girlfriend, come to the door and look out a small viewing window. The officers stated their purpose and, after some initial hesitation, Williamson opened the door and permitted the officers to enter.

Upon entry and in the course of a sweep looking for defendant, the officers observed in plain view a small clear plastic baggie of suspected marijuana on a television stand in the living room. While the officers were unable to locate defendant, other contraband also was observed in plain view in an open night stand drawer in a bedroom, including a semi-automatic handgun, baggies containing heroin and unidentified blue pills and a large amount of cash. Officers left the scene and obtained a search warrant. They then returned to the Shelton house and seized the items at issue.

## Reasonable Expectation of Privacy

Defendant contends that the officers lacked probable cause to enter the residence to serve the arrest warrants in the first instance and that any evidence seized must be suppressed as the fruit of this initial unlawful entry.[2] The government argues, however, that as a threshold matter defendant first must establish that he had a reasonable expectation of privacy in the Shelton house on the day of the search before he even may challenge the legality of the initial arrest warrant search, and that he has failed to do so. Upon due consideration of the evidence presented at the hearing, the court agrees with the government.[3]

The Fourth Amendment guarantees that "[t]he right of the people to be secure in their persons, houses, papers and effects, against unreasonable searches and seizures, shall not be violated." However, "'Fourth Amendment rights are personal rights which ... may not be asserted vicariously.'" Rakas v. Illinois, 439 U.S. 128, 143–44 (1978)(citation omitted). Accordingly, "capacity to claim the protection of the Fourth Amendment depends ... upon whether the person who claims the protection of the Amendment has a legitimate expectation of privacy in the invaded place." Id. at 143.

---

[2] Defendant does not contest that the contraband observed in plain view during the initial arrest warrant search of the residence established probable cause for the issuance of a search warrant. Instead, defendant argues that it was the initial arrest warrant search itself that was unlawful. Because the contraband that was observed during that initial unlawful search was used to establish probable cause for the issuance of the search warrant, defendant argues that all of the evidence seized during the execution of that search warrant should be suppressed as "fruits of the poisonous tree" stemming from the initial unlawful search. Wong Sun v. United States, 371 U.S. 471 (1963).

[3] Because the court finds that defendant did not have a reasonable expectation of privacy in the Shelton house on the day of the search, it need not, and does not, determine the legality of the initial arrest warrant search of the residence on the day in question. See Rakas, 439 U.S. at 134 ("A person who is aggrieved by an illegal search and seizure only through the introduction of damaging evidence secured by a search of a third person's premises or property has not had any of his Fourth Amendment rights infringed."); United States v. Agnew, 407 F.3d 193, 196-97 (3d Cir. 2005)(defendant who does not reside or otherwise have a sufficient privacy interest in a particular residential location at the time of an arrest warrant search cannot challenge the search even if it was unlawful vis-à-vis someone who resided there).

A defendant moving to suppress evidence seized in a search thus bears not only the burden of proving the search was illegal, but also that he had a legitimate expectation of privacy in the subject of the search. Rawlings v. Kentucky, 448 U.S. 98, 105 (1980). An individual's expectation of privacy is legitimate if: (1) the individual demonstrated a subjective expectation of privacy in the subject of the search; and, (2) this expectation of privacy is objectively reasonable. United States v. Cortez-Dutrieville, 743 F.3d 881, 884 (3d Cir. 2014); Rakas, 439 U.S. at 143-44.

The subjective prong requires a court to determine whether the defendant "'by his conduct, has exhibited an actual expectation of privacy.'" Cortez-Dutrieville, 743 F.3d at 884 (*quoting* Bond v. United States, 529 U.S. 334, 338 (2000)). Thus, in order to demonstrate that he had a subjective expectation of privacy, the defendant must show that he "took normal precautions to maintain his privacy." Rawlings, 448 U.S. at 105.

In this case, defendant has not shown that he had a reasonable expectation of privacy in the Shelton house on October 11, 2013. Initially, there is no evidence that defendant was residing at that address in October of 2013. None of the 5 outstanding arrest warrants, all issued between March and June of 2013, list 2641 Shelton Avenue as defendant's current address, with 4 of them listing 109 Imogene Road, Pittsburgh, and the other listing 7902 Inglenook Drive, Pittsburgh. *See* Defendant's Exhibit 1. Although one arrest warrant does list the Shelton house as a previous address, and Deputy Namey also testified that there are court records relating to a domestic incident in May of 2012 involving defendant at the Shelton house in which defendant provided 2641 Shelton as his address, no intervening records of any kind list the Shelton house as defendant's address between May of 2012 and October of 2013. Defendant also has not shown that he had a key to the residence or that he could exclude others from it. *See* Warner v. McCunney, 259 Fed. Appx. 476-77 (3d Cir. 2008)(several factors pertinent to a defendant's expectation of privacy

include whether he has a possessory interest in the place searched, whether he can exclude others from the place, whether he took precautions to maintain privacy and whether he had a key to the premises).

Moreover, contrary to defendant's argument, the mere fact that defendant's girlfriend, Keona Williamson, was residing at the Shelton house is insufficient to establish that defendant had a reasonable expectation of privacy in that place. *See, e.g.*, United States v. Pettiway, 429 Fed. Appx. 132, 135 n. 3 ("the mere fact that [defendant] was in a relationship with [his ex-girlfriend] does not automatically give him a reasonable expectation of privacy in her house.") While it is true that "an overnight guest has a legitimate expectation of privacy in his host's home," Minnesota v. Olson, 495 U.S. 91 (1990), there is no evidence that defendant was living with Williamson in October of 2013 or even that he had been staying there as her overnight guest.

Defendant contends that the fact that certain items linked to him were discovered during the search of the residence suggests that he was staying there and that these items also tend to show that he had a reasonable expectation of privacy in the Shelton house. These items are listed in the search warrant execution report and include: 2 debit cards issued to defendant; "various pieces of indicia" for defendant and Williamson; a group picture of 4 males including defendant; and, a Cooper Tire's mail in offer and a pre-paid Visa application addressed to defendant. *See* Defendant's Exhibit 2. In addition, Deputy Namey testified that certain items of men's clothing also were found at the residence during the search.

The court does not believe that the presence of the foregoing items in the Shelton house is sufficient to establish that defendant had a reasonable expectation of privacy in that location on the day of the search. Initially, there is no evidence that the male clothing found at the residence belonged to defendant, and it is not possible to tell what the "various pieces of indicia" for

AO 72
(Rev. 8/82)

defendant even are. Furthermore, although defense counsel indicated that the photograph showed defendant and the three other individuals in the Shelton house, the photograph is not available and, even if it does show defendant in the house, that is insufficient to establish that he had any sort of expectation of privacy in that place any more than it would for any of the other unknown individuals in the picture.

As to the mail-in offer and the pre-paid Visa application, it is undisputed that at some point in 2012, defendant was using the Shelton house as his address, and there is nothing to indicate how long the mail that was addressed to him had been in the house. Finally, the fact that 2 debit cards belonging to defendant were located in the house does not establish that he was staying there or had an expectation of privacy in the house on the day of the search. Again, there is no evidence to indicate how long those items had been in the house and all the presence of these items tends to show is that defendant may have been in the Shelton house at some indeterminate point. However, something more than mere presence at a location is necessary in order to establish a reasonable expectation of privacy in that place; rather, defendant must "'by his conduct, [exhibit] an actual expectation of privacy.'" Cortez-Dutrieville, 743 F.3d at 884.

Based on the evidence presented at the hearing, the court determines that defendant has not met his burden of establishing that he had a reasonable expectation of privacy in the Shelton house on October 11, 2013. There is no evidence that defendant was residing there or had been staying there as an overnight guest. The mere relationship between defendant and his girlfriend and the mere presence of certain items linked to him found in the residence are insufficient to establish that defendant exhibited an actual expectation of privacy in that location on the day of the search. In the absence of such a showing, defendant cannot challenge the legality of the search. Accordingly, for the foregoing reasons, defendant's motion to suppress physical evidence will be denied.

An appropriate order will follow.

*Gustave Diamond*
Gustave Diamond
United States District Judge

Date: *March 23, 2015*

cc: Craig W. Haller
Assistant U.S. Attorney

Thomas Livingston
Assistant Federal Public Defender